JACINTA LÓPEZ ACEVEDO, demandante y apelada, *v.* AGUSTÍN ALVAREZ, demandado y apelante.

Núm. 9027.—*Sometido:* Diciembre 5, 1944. *Resuelto:* Enero 15, 1945.

*Isaías M. Crespo,* abogado del apelante; *Antonio Reyes Delgado,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

En la demanda entablada contra su ex-esposo Agustín Alvarez, la demandante solicita de la Corte de Distrito de Arecibo que decrete que las cinco fincas que aparecen allí descritas fueron adquiridas con dinero privativo de la demandante, ya que en dicho dinero no tuvo participación alguna el demandado. Solicita, además, que en el Registro de la Propiedad se lleve a cabo la correspondiente rectificación de todas las inscripciones en relación con los títulos sobre dichas fincas. Alega que la condición de privativos de dichos bienes no se hizo constar en las escrituras, a pesar de que ella así lo exigió, porque se le dijo por el notario autorizante, que haciéndose la compra a nombre de ella no era necesario consignar tal hecho; que con posterioridad a su divorcio solicitó del demandado que lo consignase así en documento público a lo que éste se negó, exigiéndole en cambio que le transfiriera el título absoluto de dos de dichas propiedades, lo cual ella no aceptó.

En su contestación, el demandado aceptó que las propiedades valen cada una más de mil dólares y que fueron adquiridas por compra de las personas que alega la demandante. Negó, por ser, según alega, absolutamente falso, que la demandante sea dueña de esos bienes y que los adquiriera en la forma alegada por ella en su demanda, alegando en contrario que dichos bienes fueron adquiridos por la sociedad de gananciales y con dinero de ésta; que la demandante en distintas ocasiones, en procedimientos judiciales y extrajudiciales que se han seguido, ha admitido y reconocido tales bienes como pertenecientes a la sociedad de gananciales. Negó que la razón por la cual los bienes aparecen a nombre de la esposa en las escrituras fuera la que ella aduce en su demanda. Alegó el demandado, que después de efectuado el

divorcio, él y su ex-esposa acordaron la forma en que se haría la liquidación de la sociedad de gananciales, lo que efectuaron mediante la escritura número 65 otorgada ante el notario Aníbal E. Boneta, de Arecibo. Alegó, como materia de defensa, que él aportó al matrimonio la cantidad de $3,000 los que, unidos a un dinero (la cantidad no la especifica) que aportó su ex-esposa, fueron utilizados para realizar negocios de diversa índole; que en determinada ocasión ella le propuso que se divorciaran para poder liquidar la sociedad de gananciales por el hecho de que habían surgido ciertas discrepancias y contrariedades entre ellos, pero que luego hubo una reconciliación y se desistió; que más tarde volvieron a disgustarse y la esposa radicó demanda de divorcio en la Corte de Distrito de Aguadilla; que en esa demanda alegó específicamente la existencia de bienes gananciales; que esos bienes mencionados son los mismos cuyo título se discute ahora; que para que fuera efectiva inmediatamente la sentencia de divorcio, y por sugestión de la demandante, él renunció a su derecho de apelación en el caso de divorcio; que hecho esto, se procedió a hacer la liquidación y se hizo mediante la antes mencionada escritura número 65, por virtud de la cual se adjudicaron al demandado las casas marcadas con los números 2, 3 y 5; que más tarde la demandante le propuso contraer matrimonio nuevamente y al rechazar él la proposición, la demandante, movida por celos, sabedora de que el demandado pensaba contraer matrimonio con cierta joven, y para frustrar esos propósitos, ha radicado la presente demanda, haciendo anotar aviso de demanda sobre los bienes adjudicados al demandado y dando aviso a los inquilinos para que no le paguen a él los cánones correspondientes. Y por vía de reconvención el demandado reclama la suma de $1,000, como balance líquido, después de descontar las reparaciones y las contribuciones por lo que la demandante ha percibido por concepto de rentas de una de las casas adjudicadas al demandado.

La corte inferior planteó así las cuestiones a resolver:

(a) ¿De quién era el dinero con que se adquirieron las fincas objeto del pleito? ¿Era de la demandante, proveniente del regalo y herencia de su padre Pablo López, o era el producto de la gestión administrativa del esposo durante el matrimonio, o parte de ella y parte de él?

(b) En caso de resolver que el dinero era privativo de Jacinta López Acevedo, ¿qué valor probatorio tiene la escritura núm. 65, que se otorgó ante el notario Boneta Colón, en 11 de julio de 1943, a virtud de la cual aparecen demandante y demandado liquidando la sociedad de gananciales? Y en la hipótesis de que no tenga valor alguno, ¿podemos hacer pronunciamiento sobre el particular, en el estado en que se encuentran las alegaciones y la prueba?

Contra la sentencia declarando con lugar la demanda, el demandado ha interpuesto el presente recurso de apelación, imputando a la corte sentenciadora la comisión de once errores. Por entender que los errores 3 al 8, inclusives, envuelven la misma cuestión—error en la apreciación de la prueba —los consideraremos conjuntamente y en primer lugar. Veamos la prueba.

En apoyo de su alegación de que los bienes objeto de este litigio son de su exclusiva propiedad por haber sido adquiridos con dinero producto de la herencia de su padre y de regalos que éste le hiciera en vida, la demandante presentó en evidencia una escritura de compraventa, otorgada ante el notario Aníbal E. Boneta Colón en la que ella aparece vendiendo en $22,500 a Arturo S. Marqués propiedades que por herencia recibió de su padre; y, además, un recibo de contribución sobre herencia, expedido por el Tesorero de Puerto Rico. En ese recibo se describen los bienes de la herencia, la que, para los efectos de la contribución, fué calculada en $32,800. Esta prueba demuestra la aptitud económica de la demandante para adquirir los bienes cuyo título

de propiedad exclusivo se discute. Y para demostrar que efectivamente fué ella quien los adquirió, presenta las correspondientes escrituras de compraventa, otorgadas ante el notario Aníbal E. Boneta Colón, en todas las cuales aparece ella como la única y exclusiva adquirente. Debemos hacer constar, que si bien es cierto que ella aparece como la única y exclusiva adquirente en todas, es no menos cierto que en ninguna de dichas escrituras se hace constar que el dinero utilizado en la compra provenía del producto de la venta de los bienes heredados de su padre. Alega ella en su demanda que exigió que esa circunstancia se hiciera constar en la escritura *"y se le indicó por el notario autorizante que haciéndose la compra a nombre de ella no era necesario consignar tal hecho"*.

La propia demandante declaró: Que se dedica a quehaceres domésticos; que es divorciada de Agustín Alvarez (el demandado) con quien estuvo casada durante ocho años; que cuando se casaron fueron a vivir con el padre de ella; que de allí se mudaron al número 51 de la calle Cristóbal Colón, en una casa que ella compró con dinero que le regaló su padre; que su padre tenía varias fincas y entre ellas una grande arrendada a la Central Cambalache por $200 mensuales; que la familia de su padre la componían ella y una madrastra; que su ex-esposo no pudo aportar nada al matrimonio, pues antes de casarse con ella era chófer de *truck* en la Central Cambalache y estaba desempleado; que durante el matrimonio nunca trabajó; que el padre de ella era quien les daba lo necesario. Que de los $20,000 que recibió por la venta a Marqués de las propiedades que heredó de su padre, depositó $15,000 en el Banco, pagó $1,000 al abogado y dió $4,000 al esposo para comprar unos automóviles que fueron dedicados al servicio público. Que con los $15,000 depositados en el banco se fueron adquiriendo las distintas propiedades; que todas esas propiedades estaban a su nombre y eran administradas por ella y los inquilinos le pagaban los cánones de

arrendamiento a ella, así como a su nombre se expedían los recibos de agua y de contribuciones de las casas.

Para sostener su alegación de que la demandante ha comparecido en corte y ha admitido que los bienes son gananciales, el demandado presentó: (*a*) una copia certificada de la demanda de divorcio radicada por el demandado ante la Corte de Distrito de Arecibo; (*b*) una copia certificada de la demanda de divorcio radicada ante la Corte de Distrito de Aguadilla por la aquí demandante contra su actual exesposo, en la que la demandante hace alusión a unos bienes gananciales; (*c*) el récord taquigráfico del juicio de divorcio en donde dos testigos declaran que el matrimonio tenía bienes, sin describirlos; y (*d*) una escritura de liquidación de gananciales.

Declaró el demandado, que estuvo casado ocho años con la demandante; que trajo de los Estados Unidos $3,800; que las propiedades se adquirieron con dinero de los dos; que al casarse con él su esposa no tenía dinero alguno; que la casa de la calle Cristóbal Colón se adquirió con dinero de los dos, la mitad la puso él, con lo que había producido mediante la inversión de su dinero y la otra mitad la puso ella; que así se adquirieron todas las propiedades, la mitad él y la mitad ella con dinero privativo; que por disgustos que tuvieron, en una ocasión ella le manifestó deseos de divorciarse y él fué y radicó una demanda de divorcio contra ella, la que no prosperó porque se reconciliaron; que más tarde por nuevos disgustos ella radicó demanda de divorcio contra él en la Corte de Distrito de Aguadilla; que se divorciaron y después del divorcio se hizo la liquidación de la sociedad de gananciales mediante escritura otorgada ante el notario Boneta Colón. En contestación a las repreguntas de la parte demandante declaró que no recuerda el mes exacto en que vino de los Estados Unidos; que tampoco recuerda el mes en que se casó; que sí recuerda que trajo $3,800 de los Estados Unidos, que no los depositó en banco alguno porque para esa

época "cuando yo vine ya los bancos habían quebrado y yo no quería que me fueran a llevar mi dinero"; que tampoco los depositó en el correo; que guardó el dinero en su casa; que se dedicó a trabajar de mecánico e invirtió $800 en un carro público; que se dedicó a comprar carros viejos para arreglarlos y venderlos; que el dinero que él ganaba se lo daba a guardar a su esposa; que la demandante le dió $2,500 de los $22,500 en que vendió las propiedades a Marqués porque se los debía por razón de un préstamo que él le hiciera para un tío de ella; que no sabe el uso que ella haya hecho de los $20,000, como tampoco lo que hizo con los $6,000 que recibiera de la Central Cambalache.

Como "rebuttal" declaró la demandante que su ex-esposo no aportó un solo centavo al matrimonio; que el padre de ella sufragó todos los gastos "para el matrimonio"; que ella le tuvo que comprar el traje con que él se casó; que nunca ha prestado dinero a tío alguno de ella; que su ex-esposo sólo le entregó los $20,000 de la venta de los bienes; que él nunca tuvo negocio alguno de ganado y que jamás le entregó cantidad alguna de dinero; que del negocio de los carros públicos, a pesar que ella dió los $4,000 para comprar dichos carros, no sólo nunca le dieron nada, sino que cuando se reparaban ella tenía que pagar los gastos; que antes de morir su padre era éste quien le daba para el sostenimiento de su hogar y que después de muerto él, estos gastos se cubrían con el producto de sus propiedades; que aparte de lo invertido en las propiedades objeto de este pleito, el resto del dinero su esposo "lo despilfarró con las mujeres de la vida y lo que se gastaba en la casa"; que durante el matrimonio nunca "vió que él trabajara"; que su esposo no contribuyó nada para la compra de las propiedades; que la demanda de desahucio que contra Herminia Rosado se llevó fué pre-preparada por su ex-esposo y el notario Boneta Colón, informándole a ella que iban a llevar ese procedimiento, pero que nunca leyó ni firmó tal demanda; que no es cierto que ella

insultara a su esposo; que después del divorcio sus palabras "no han vuelto a juntarse con él".

He aquí, en las propias palabras del juez sentenciador, la apreciación que éste hizo de la prueba:

"La demandante afirmó, y el demandado lo admite, que las fincas están declaradas para los efectos de contribuciones territoriales, a nombre de ella, y es ella quien las paga; que para los efectos del servicio de agua las casas están a nombre de ella, y es ella quien paga el agua, y que los recibos para el cobro de los alquileres de las casas los prepara ella a su nombre, aunque es el demandado quien ha cogido el dinero.

"Alvarez no ha explicado por qué estos actos de administración y dominio no los ha ejercido él, y sí la esposa.

"Mientras la demandante, corroborada por el demandado, ha comprobado la existencia del dinero que alegó tener procedente de su padre, el demandado no ha demostrado a satisfacción de la Corte el origen y existencia del que dijo haber traído de Estados Unidos.

"El Juez que suscribe no cree la versión del demandado, en cuanto a que trabajara en el continente y trajera de allá ahorros por valor de $3,500 (*sic*). Su declaración en este respecto no nos convence.

"La demandante niega que el demandado le entregara dinero alguno cuando casaron; afirma que nunca el demandado le ha entregado dinero procedente de la administración de sus bienes, y sostiene que ella ha entregado casi todo su capital, montante a más de $30,000 al demandado, y éste lo ha derrochado, sin que haya producido un centavo de ganancia o beneficio.

"La corte cree la declaración de la demandante en todas sus partes; ella es una mujer sencilla e inspira absoluta confianza en su testimonio. Todos los elementos determinantes de juicio, y apreciación razonable de la prueba, están a su favor. Ella relató con ingenuidad y sin vacilaciones todas las vicisitudes de su vida matrimonial, y sus negocios, y el despojo de que ha sido víctima a manos de su esposo.

"El abogado del demandado es un profesional con larga experiencia en el arte de contrainterrogar y estuvo en condiciones de sacar a flote cualquier debilidad que hubiera en la declaración de la demandante, y en ningún momento la tachó.

"Independientemente de los documentos y de las admisiones del demandado, que tienden a corroborarla fuertemente, la corte hace

constar que la declaración de la demandante por sí sola, le ha producido absoluta convicción de que lo relatado por ella es la verdad, y por tanto su versión destruye por completo la del demandado, a quien la corte no puede darle crédito, *teniendo en cuenta la forma y carácter de su testimonio,* y su conducta en relación con los asuntos de la demandante, que surge de toda la evidencia.

· "En la conciencia de un hombre amante de la justicia, investido con el ministerio de buscarla y administrarla, no puede caber otra conclusión que la que ahora·establecemos: el dinero con que fueron adquiridas las fincas sobre que versa la demanda fué dinero de la exclusiva pertenencia de doña Jacinta López Acevedo, proveniente del haber de su fenecido padre, y en ese dinero y las fincas el demandado Alvarez no ha tenido participación alguna, ya sea con carácter privativo, como ganancial por su matrimonio." (Bastardillas nuestras).

El detenido y cuidadoso examen que hemos hecho de toda la evidencia ha dejado en nuestro ánimo la misma impresión que la que produjo en la conciencia del juez sentenciador, quien tuvo la oportunidad que no hemos tenido nosotros de ver y oír declarar a las partes interesadas en este litigio. Es nuestro deber no alterar las conclusiones a que llegó la corte inferior, con las cuales estamos enteramente conformes.

▬▬ En los dos primeros señalamientos se alega que la corte inferior erró al declarar la nulidad de la escritura de liquidación y partición de gananciales, dentro de este procedimiento, sin que en la súplica de la demanda se pidiese un pronunciamiento a ese efecto.

No se cometió el alegado error. La demandante alegó y probó que los bienes descritos en la demanda, adquiridos por ella a su nombre durante su matrimonio con el demandado y que presuntivamente tenían el carácter de gananciales, son en realidad bienes privativos de ella por haberlos adquirido con dinero procedente de la herencia de su difunto padre. Alegó el demandado—y trató infructuosamente de probarlo—que los bienes en cuestión habían sido adquiridos con el producto de su gestión administrativa durante el ma-

trimonio o con fondos aportados parte por ella y otra parte por él.

Como un elemento esencial de su prueba, el demandado ofreció una copia de la escritura de partición de gananciales. Sostiene el demandado que el contenido de dicha escritura no puede ser variado por prueba testifical; que habiéndose consignado la partición en escritura pública, el valor probatorio de ésta no puede ser impugnado colateralmente; y que la demandante, habiendo otorgado dicha escritura, está ahora impedida de negar e impugnar el contenido de la misma.

Del récord taquigráfico aparece que al ser ofrecida en evidencia la escritura de partición de gananciales, se opuso a su admisión la demandante por el fundamento de que la prueba por ella presentada revelaba que en el acto o contrato consignado en dicha escritura no había mediado consideración o causa de clase alguna. El documento fué admitido en evidencia, pero habiendo llegado a la conclusión de que la prueba de la demandante era digna de crédito, mas no así la del demandado, y que la demandante había probado a su satisfacción que los bienes en litigio habían sido adquiridos por ella con su propio peculio, la corte sentenciadora estuvo justificada cuando declaró que la partición consignada en dicha escritura era nula por falta de causa o por ser falsa la causa en ella expresada.

En el volumen 20, páginas 786 y 787 de sus Comentarios al Código Civil, dice Scaevola:

"La alegación de causa falsa podrá hacerse o por acción o por excepción, es decir, bien planteando primordialmente y de lleno la cuestión de nulidad, bien oponiéndose al cumplimiento del contrato y aduciendo entonces la causa simulada. La prueba corresponderá al que pida, demandando, respondiendo o reconviniendo la nulidad: y si por el contrincante se opusiese la existencia de causa verdadera y lícita, entonces de su cargo correrá efectuar esta probanza. Así también opina el comentarista Manresa, cuando dice: 'En el supuesto de causa falsa, la prueba de que lo es corresponde al deudor o al obligado recíprocamente que no quiera cumplir el contrato, ya que la

falsedad no puede presumirse, y una vez demostrado esto, le corresponde al acreedor, o sea al que exija el cumplimiento de lo convenido, acreditar que hubo causa verdadera y lícita.' ''

La demandante sostuvo con éxito su excepción de causa falsa. La prueba por ella presentada fué suficiente para controvertir la presunción de verdad que la ley (Código de Enjuiciamiento Civil, artículos 463, inciso 2, y 464, inciso 38) establece en cuanto a los hechos relatados en un documento escrito, con la excepción de que dicha regla no impide que se presente evidencia oral para demostrar la inexistencia de causa.

¿Probada satisfactoriamente la nulidad de la partición, por falta o falsedad de la causa, qué razón o fundamento legal existe por la cual la corte sentenciadora debió haberse abstenido de declarar nula la escritura en que la misma fué consignada? Las razones y fundamentos aducidos por el apelante son puros tecnicismos, que en nada pueden afectar los derechos substantivos de las partes. Tanto la demandante como el demandado, que son los únicos interesados en la controversia, se sometieron a la jurisdicción de la corte y aportaron su prueba, el demandado para sostener la validez de la partición y la demandante para probar, como probó, que la alegada partición estaba viciada de nulidad por falsedad de la causa. Bajo tales circunstancias, la corte estaba obligada a resolver el dilema planteado por la evidencia. Si la prueba de la demandante merecía crédito, la escritura de partición de gananciales era y debía ser declarada nula; si no era digna de crédito la partición debía ser declarada válida. Habiendo dado entero crédito a la prueba de la demandante, la corte sentenciadora actuó correctamente al decretar la nulidad e inexistencia de la escritura de partición de gananciales, removiendo así de una vez la nube que sobre el título de la demandante a los bienes por ella reclamados pudiera constituir dicha escritura.

Es cierto que en la súplica de la demanda no se pidió que se decretara la nulidad de la escritura de partición, pero el remedio concedido por la corte es perfectamente compatible con las algaciones de la demanda.

*La sentencia debe ser confirmada.*